**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

September 12, 2025

Blake Rohrbacher, Esquire
Kyle H. Lachmund, Esquire
Sandy Xu, Esquire
Elizabeth J. Freud, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

Bradley R. Aronstam, Esquire
S. Michael Sirkin, Esquire
Holly E. Newell, Esquire
Benjamin M. Whitney, Esquire
Kevin A. Rudolph, Esquire
Ross Aronstam & Moritz LLP
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801

RE:  *Albertson Companies, Inc. v. The Kroger Co.*,
     C.A. No. 2024-1276-LWW

Dear Counsel:

Albertsons Companies, Inc. has moved to compel documents regarding the resignation of The Kroger Co.'s Chief Executive Officer. Kroger opposes the motion, arguing that the information Albertsons seeks is irrelevant and disproportionate. I agree. For the reasons below, the Motion is denied.

## I.    BACKGROUND

This dispute stems from a failed merger between Albertsons and Kroger. Albertsons alleges that Kroger breached its obligations in the parties' merger agreement. Its core claim is that Kroger failed to use contractually mandated efforts, including taking "any and all actions" necessary to secure regulatory approval for

the merger and "eliminat[ing]" any antitrust "impediments" to closing.[1]  The parties agree that Kroger's then-Chairman and CEO, Rodney McMullen, played a "principal role" in the merger process.[2]

On March 3, 2025—about three months after the merger was blocked on antitrust grounds—Kroger announced McMullen's resignation.[3]  According to a Form 8-K filed by Kroger, the resignation "follow[ed] a Board investigation of [McMullen's] personal conduct that, while unrelated to the business, was inconsistent with Kroger's Policy on Business Ethics."[4]  The announcement stated that the conduct was "not related to [Kroger's] financial performance, operations or reporting, and . . . did not involve any Kroger associates."[5]

Four days later, Albertsons served discovery requests on Kroger that seek all documents about the conduct prompting McMullen's resignation, the Board investigation, and any related Board actions.[6]  Kroger objected to the requests on

---

[1] Verified Am. Compl. (Dkt. 17) ("Compl.") ¶¶ 2, 10; *see* Pl.'s Mot. to Compel (Dkt. 48) ("Mot.") ¶ 3.

[2] Mot. ¶ 9; *see also* Def.'s Opp'n to Mot. to Compel (Dkt. 55) ("Opp'n") ¶ 7.

[3] Mot. ¶ 5; *id.* at Ex. 7 (Kroger interrogatory responses); *see also* Compl. ¶ 40; *id.* ¶ 50 (stating that the merger was blocked by a federal court on December 10, 2024).

[4] Mot. Ex. 1 (The Kroger Co., Form 8-K, filed Mar. 3, 2025 ("March 3 Form 8-K")).

[5] *Id.*

[6] Mot. ¶ 19; *see id.* at Ex. 10 (Albertson's requests for production); *see also id.* at Ex. 11 (Kroger's responses and objections).

relevance grounds but engaged in a meet-and-confer process. During that process, Kroger declined to produce documents but gave Albertsons' counsel two confidential written proffers describing the nature of McMullen's conduct, the Board's investigation and conclusions, and the circumstances of McMullen's departure.[7]

Albertsons, unsatisfied with the proffers, filed this Motion. It argues that the requested documents are relevant to whether McMullen's personal conduct distracted him from fulfilling Kroger's obligations under the merger agreement and to his credibility.[8] Kroger opposes the motion, insisting that the conduct was personal and is irrelevant.[9]

## II. ANALYSIS

The Court of Chancery affords a broad scope of discovery. Under Court of Chancery Rule 26(b)(1), parties may seek discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."[10]

---

[7] *See* Opp'n ¶¶ 12-14. Kroger offered to serve an interrogatory response in lieu of document production, but Albertsons requested written proffers instead. *Id.* ¶ 12.

[8] *See* Mot. ¶¶ 25-27.

[9] *See* Opp'n ¶ 5.

[10] *New Castle Cnty. v. Christiana Town Ctr., LLC*, 2004 WL 1835103, at *4 (Del. Ch. Aug. 16, 2004) (citing Court of Chancery Rule 26(b)(1)).

The pertinent standard is whether information "appears reasonably calculated to lead to the discovery of admissible evidence."[11]

The permissible scope of discovery is circumscribed by principles of relevance and proportionality.[12] The court may limit discovery when it "is not proportional to the needs of the case," given the "issues at stake . . . , the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[13] The burden rests with the objecting party to demonstrate that the requested discovery is improper.[14]

Kroger has met its burden. The touchstone of any discovery request is relevance.[15] McMullen's conduct is far afield from Kroger's alleged breach of contractual obligations. Even if tangentially relevant, discovery into sensitive details of McMullen's personal life risks a needless diversion in this suit.[16]

---

[11] *Id.*

[12] *See In re Tyson Foods, Inc.*, 2007 WL 2685011, at *3 (Del. Ch. Sept. 11, 2007) ("[T]he scope of discovery is broad, but not limitless, and this Court may exercise its sound discretion in delineating the appropriate scope of discovery.").

[13] Ct. Ch. R. 26(b)(1)(iii).

[14] *See Van de Walle v. Unimation, Inc.*, 1984 WL 8270, at *2 (Del. Ch. Oct. 15, 1984).

[15] *See In re Oracle Corp. Deriv. Litig.*, 2019 WL 6522297, at *18 (Del. Ch. Dec. 4, 2019).

[16] *See Sokol Hldgs., Inc. v. Dorsey & Whitney, LLP*, 2009 WL 2501542, at *9 (Del. Ch. Aug. 5, 2009) ("[E]ven where discovery is relevant, this court may narrow its scope 'to guard against "fishing expeditions" or to ensure that the discovery sought is properly related to the issues presented in the litigation.'" (citation omitted)); *see also* 6 *Moore's Federal Practice* § 26.45 (2025).

Substantive Relevance

Albertsons first invokes substantive relevance, theorizing that McMullen's problems distracted him from fulfilling Kroger's obligations to Albertsons.[17] This argument lacks a limiting principle. External demands and commitments are a constant undercurrent beneath the surface of professional life. At critical moments, personal hardships—a family crisis, a health battle, or the loss of a loved one—take priority over job performance. By Albertsons' logic, these deeply sensitive issues would be fair game for discovery in a busted deal case. They are, however, extraneous to the litigation.

To oversimplify a complex and fact-intensive matter, this case concerns whether Kroger lived up to its promised efforts toward the shared goal of securing regulatory approval. The level of time and attention that McMullen (and Kroger's other agents) devoted to that task is relevant. If McMullen's own performance fell short due to personal distractions, the effect on Kroger's overall efforts is also pertinent. But the source of his distraction is immaterial.

Albertsons insists otherwise because the personal matter was career-ending and deemed incompatible with Kroger's business ethics policy. Yet there are endless scenarios where an individual's conduct might breach corporate policy

---

[17] Mot. ¶ 26.

without affecting her ability to facilitate regulatory approval for a merger. Imagine, for example, a top executive arrested for assault after a brawl at a football game. This serious lapse in personal judgment may violate her employer's code of conduct and constitute grounds for termination. But that misconduct has no logical connection to the executive's ability to analyze antitrust concerns, negotiate with regulators, and exercise professional efforts in furtherance of a contract.

Kroger has consistently maintained that McMullen's resignation stemmed from conduct "unrelated to the business."[18] That statement followed an investigation into McMullen's actions by Kroger's Board. It is further substantiated by the proffers from Kroger's senior Delaware counsel, which make plain why the underlying conduct prompted a quick exit. Although Albertsons questions the thoroughness of the Board's investigation, its suspicion does not give it license to embark on a fishing expedition.[19] I am comfortable, based on the proffers and information submitted for *in camera* review, that McMullen's conduct was unrelated to Kroger.[20] By extension, it is unrelated to Kroger's actions in furtherance of regulatory approval for the merger.

---

[18] March 3 Form 8-K.

[19] *See* Pl.'s Reply in Supp. of Mot. to Compel (Dkt. 61) ("Reply") ¶ 17.

[20] At oral argument, Kroger's senior Delaware counsel explained that the proffers followed his review of sample documents. I asked counsel for additional details on the sample— what it consisted of, what the documents pertained to, how the documents related to

Credibility

Albertsons next argues that documents about McMullen's conduct are needed to assess his credibility.[21] Information bearing on credibility is generally discoverable.[22] Where discovery of "peripheral issues" is sought for impeachment purposes, however, courts require a legitimate basis; "unfounded speculation" will not suffice.[23] "In the absence of some justification on the part of the discovering party . . . requests for discovery delving into private and personal information only peripherally related to the substance of the testimony a witness is likely to give at trial will probably meet with a predisposition to treat them as discovery abuse."[24] Were it otherwise, a party could gain unfettered discovery into a witness's personal bad acts under the guise of exploring her credibility.

---

Albertsons' document requests, and how the sample was curated. *See* Ltr. to Counsel (Dkt. 87). In response, counsel provided me with a letter and affidavit detailing the information reviewed. *See* Ltr. from B. Aronstam (Dkt. 88) (enclosing confidential materials for *in camera* review). Those materials underscore that the discovery Albertsons seeks is irrelevant.

[21] Mot. ¶ 27.

[22] *See, e.g.*, *In re Rural Metro Corp. S'holders Litig.*, 2013 WL 6634009, at *6 (Del. Ch. Dec. 17, 2013) (prohibiting the introduction of a witness's declaration because the opposing party had not been entitled to discovery on matters "that would undercut [the witness's] credibility"); *Rohm & Haas Co. v. Dow Chem. Co.*, 2009 WL 537193, at *2 (Del. Ch. Feb. 19, 2009) (concluding that an interested party could be deposed because the deposition might "produce relevant impeachment evidence").

[23] *See Moore's*, *supra* note 16, § 26.45(2)(b) (citing the Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2000 amendment).

[24] *Id.*

The caselaw cited by Albertsons demonstrates the point. In *Burkhart v. Genworth Financial Inc.*, a plaintiff advancing fraudulent transfer claims sought documents relevant to the fair value of the company's assets.[25] The defendants argued that Delaware's adoption of statutory accounting principles made fair market value irrelevant. The court ordered the defendants to produce market valuation analyses, explaining that they were "sufficiently relevant for assessing the credibility of [the d]efendant['s] invocation of [statutory accounting principles]."[26]

The information sought in *Burkhart* is categorically different from that requested here. Albertsons asserts that it would like to probe "whether McMullen's violation involved deceit, how long McMullen hid his [c]onduct from his own Board, and whether McMullen provided false or misleading information about his [c]onduct to Kroger."[27] That sort of character evidence is, at best, only tenuously connected to the facts at issue—unlike in *Burkhart*, where the impeachment evidence was directly relevant.

---

[25] 2023 WL 1434059 (Del. Ch. Feb. 1, 2023) (ORDER).

[26] *Id.* at *4.

[27] Mot. ¶ 27.

Potential Discovery Abuse

Even assuming the information about McMullen's conduct has some tangential relevance, limitations are warranted because "the discovery sought is not proportional to the needs of the case."[28]  "[C]onsiderations of subject matter, time, and space are important to confine the scope of discovery to those matters that are truly relevant and to prevent discovery from . . . furthering purposes ulterior to the litigation."[29]  The proportionality requirement ensures that discovery is not wielded as "a strategic weapon, rather than a legitimate method to flesh out issues" for trial.[30]  Here, the potential repercussions of revealing deeply personal information outweigh any slight benefit, given the extensive information about McMullen's performance as CEO that has been or will be produced by Kroger.

Albertsons maintains that "Delaware courts in commercial litigation routinely require discovery of potentially embarrassing but relevant material" about executive misconduct.[31]  That point, though true, ignores the cases' context.  In each example

---

[28] Ct. Ch. R. 26(b).

[29] *Cal. Pub. Empls.' Ret. Sys. v. Coulter*, 2004 WL 1238443, at *1 (Del. Ch. May 26, 2004) (quoting *Plaza Sec. Co. v. Off.*, 1986 WL 14417, at *5 (Del. Ch. Dec. 15, 1986)).

[30] *In re Pennzoil Co. S'holders Litig. Cons.*, 1997 WL 770663, at *2 (Del. Ch. Oct. 27, 1997) (explaining that discovery must be "carefully supervised" by the court).

[31] Reply ¶ 23.

Albertsons cites, the executive's misconduct was a central issue in the litigation.[32] Here, it is decidedly not.

This court must apply common sense to prevent litigation from being derailed by sideshows.[33] The information sought by Albertsons is of a highly sensitive and personal nature. The tenuous relevance, if any, of that information is disproportionate to the risk of injecting a burdensome, distracting, and prejudicial issue into this commercial dispute.

## III. CONCLUSION

The discovery Albertsons moves to compel is irrelevant to the claims and defenses in this case. Even if it had a loose connection to relevant issues, the

---

[32] *See McDonald's Corp. v. Easterbrook*, C.A. No. 2020-0658-JRS, at 56, 63-64 (Del. Ch. Mar. 29, 2021) (TRANSCRIPT) (permitting discovery into an ex-executive's "personally sensitive information" in a breach of fiduciary duty suit where the executive's "conduct while CEO [was] at the heart of th[e] dispute"); *In re World Wrestling Ent., Inc. Merger Litig.*, 2025 WL 1770622, at *1 (Del. Ch. June 25, 2025) (ORDER) (ordering discovery into an executive's personal misconduct that allegedly motivated a self-interested merger to secure the executive's continued employment); *Trascent Mgmt. Consulting, LLC v. Bouri*, 2018 WL 4293359, at *21-24 (Del. Ch. Sept. 10, 2018) (considering an executive's misconduct, which prompted his termination, where the executive's lies about the nature of his departure fraudulently induced the plaintiff to form a company with him and award him a major equity stake and officer position).

[33] *See Plaza Sec.*, 1986 WL 14417, at *5 ("The application of the discovery rules is not a mechanical determination but, rather, is a matter addressed to the sound discretion of this Court. That discretion must be exercised in a sensible way to fairly accommodate all of the interests involved."); *see also Sokol Hldgs.*, 2009 WL 2501542, at *9; *Tyson Foods*, 2007 WL 2685011, at *1.

information is of little probative value.  Accordingly, the motion to compel is denied.

IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor